UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERRANCE PAUL MCABEE,<br>a/k/a Mack,<br><br>Defendant. | 4:14-CR-40027-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Terrance Paul McAbee, moves for compassionate relief under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 92. Plaintiff, the United States of America, opposes the motion. Docket 99. For the following reasons, the court denies defendant's motion for compassionate relief.

**BACKGROUND**

McAbee pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 42, 46. The court sentenced McAbee to 105 months in custody and 5 years of supervised release. Docket 86 at 2-3. McAbee is eligible for home confinement on January 18, 2022, and his current anticipated release date is July 18, 2022. Docket 95 at 8.

McAbee is incarcerated at the Federal Correctional Institution (FCI) Sheridan. Docket 97 at 1. As of August 27, 2020, there are currently two active COVID-19 cases among FCI Sheridan's inmates, 0 active COVID-19 case

among the facility's staff, and 0 recovered COVID-19 cases. *See BOP: COVID-19 Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Aug. 27, 2020).

McAbee is 41 years old. Docket 96 at 24. His chronic medical conditions include asthma and obesity. Docket 95 at 65; Docket 96 at 53, 66-67. McAbee was diagnosed with asthma at a young age. Docket 72 ¶ 82; Docket 96 at 25. He has two inhalers; McAbee's use of his inhalers varies. Docket 93 at 13; Docket 96 at 25, 411, 496. McAbee is 227 pounds and 71 or 72 inches tall. Docket 96 at 434. Based on his weight and height, his body mass index (BMI) is between 30.8 and 31.7. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited on Aug. 27, 2020). McAbee also has gastrointestinal issues, a history of hypertension, and a first-degree atrioventricular block (but no other EKG abnormalities). Docket 95 at 18, 54-55.

On April 8, 2020, McAbee completed an Informal Resolution form. Docket 95 at 3. McAbee requested that he be considered for home confinement due to COVID-19 and his asthma. *Id.* A unit manager responded on April 14, 2020, stating that they were unable to grant McAbee's request. *Id.* On April 20, 2020, McAbee completed an Inmate Request form, requesting that he be considered for home confinement because of COVID-19 and his asthma. *Id.* at 1. On May 7, 2020, McAbee sent a formal request to the Warden, asking to be released early under the Compassionate Release Program due to his asthma

and blood pressure. Docket 97-1.

McAbee filed a pro se motion with the court for relief under the First Step Act. Docket 92. McAbee's counsel subsequently filed a supplement to his pro se motion. Docket 97.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

McAbee argues that the "unprecedented and extraordinary risk posed by

3

the global COVID-19 pandemic," together with his adverse health conditions, asthma and obesity, satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 97 at 1. McAbee requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

I. **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

McAbee first submitted a request for home confinement on April 8, 2020. Docket 95 at 3. McAbee also submitted two requests for compassionate release to the warden on April 20, 2020, and May 7, 2020. Docket 95 at 1; Docket 97-1. Regardless of which request this court considers to be the formal request to the warden, the 30-day period expired, at the latest, on June 8, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, McAbee's motion is ripe for review on the merits.

II. **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant

4

compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct.

5

31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, McAbee has failed to show that his medical conditions rise to extraordinary and compelling

circumstances.

McAbee contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 97 at 8-12. McAbee argues that his health conditions, asthma and obesity, put him at high-risk of severe illness if he contracts COVID-19. *Id.* COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Aug. 14, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, and several others. *Id.*

The court has reviewed the medical records submitted in this case. McAbee's medical conditions include obesity and asthma. With a BMI of 30.8 or 31.7, McAbee is slightly obese, and therefore, he presents the additional risk factor of obesity. But "the fact that [McAbee] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that

7

extraordinary and compelling reasons justify the reduction of his sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. Milchin*, 2020 WL 4475902, at *1 (E.D. Pa. Aug. 4, 2020) (finding defendant's "slight obesity," BMI of 30.5, and elevated cholesterol did not justify early release).

     For McAbee's asthma, there is an absence of documentation showing that McAbee's asthma is moderate or severe. McAbee is prescribed a daily inhaler and a rescue inhaler. Docket 95 at 62. McAbee admits that his asthma is "stable at times and requires medical attention at others." Docket 97 at 1. In 2019, McAbee had no complaints with his asthma and told medical providers he only needed his rescue inhaler during exercise. Docket 96 at 411; Docket 95 at 18. Most recently, on April 10, 2020, McAbee told medical providers that his asthma was worsening with the improving weather. Docket 96 at 478. At that time, medical providers prescribed a steroid inhaler, in addition to McAbee's other inhalers, to address the issue. *Id.* Overall, medical records show that his asthma appears to be well-controlled with the inhalers that the Bureau of Prisons (BOP) provided him. *See United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that this risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196, at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release.").

8

And while these conditions may put McAbee at a higher risk of serious illness if he contracts COVID-19, there is no evidence in the record to suggest he has not been able to manage these conditions while in the prison environment. *See* Docket 97 at 9 (admitting McAbee self-manages his asthma using two inhalers); *see also* Docket 96 at 478 (receiving medical attention and prescription for worsening asthma symptoms). Thus, the court finds that McAbee does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D). *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus.").

Additionally, McAbee's motion has not shown that the BOP's response to the pandemic at FCI Sheridan has been inadequate in any way. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.") (emphasis omitted). At the time the parties' briefs were filed, FCI Sheridan had no reported cases of COVID-19. Docket 99 at 17. At the present time, there are two active COVID-19 cases amongst the inmates. "Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner." *United States v. Williams*, 2020 WL

9

4756738, at *4 (E.D. Pa. Aug. 17, 2020); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although McAbee is unable to practice preventative measures as effectively in custody as he would in home confinement, FCI Sheridan encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. Docket 99 at 17-18; *see also BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/ coronavirus/covid19_status.jsp (last visited Aug. 27, 2020). McAbee can do all those recommendations to some extent.

The court believes that McAbee's medical conditions are appropriately managed at FCI Sheridan, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates McAbee's health conditions, such ailments, coupled with the present conditions at FCI Sheridan, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming McAbee's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. McAbee was found responsible for distributing more than 4,000 grams of methamphetamine. Docket 72 ¶ 30. At his sentencing, McAbee had a

criminal history category of III and was considered an organizer or leader of the offense. *Id.* ¶¶ 38, 54. Additionally, the court previously reduced McAbee's sentence. *See* Dockets 85, 86. McAbee's current sentence of 105 months is already less than the offense's mandatory minimum of 120 months. Therefore, the court finds that McAbee's sentence of 105 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

McAbee has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Dockets 92) is denied.

Dated September 2, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE